UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ASHTON W. THOMAS,

        Plaintiff,

v.

JOAN MARIE PALMER,

        Defendant.

CASE NO. 3:21-cv-05397-JRC

ORDER GRANTING SUMMARY JUDGMENT MOTION

    This matter is before the Court on the parties' consent and on defendant's motion for summary judgment. Dkts. 38, 57.

    Plaintiff, who proceeds *pro se*, brings suit for damages against a Department of Corrections medical provider, physician's assistant Joan Palmer, on the basis that she violated the Eighth Amendment and committed medical negligence by providing inadequate care to plaintiff while he was incarcerated. Plaintiff has failed to come forward with evidence from which a reasonable finder of fact could conclude that defendant acted with deliberate indifference when caring for plaintiff's foot injury. Moreover, he has not come forward with

medical expert evidence to support that defendant committed medical negligence. Accordingly, defendant's summary judgment is granted, and the case is dismissed with prejudice. Permission to proceed *in forma pauperis* on appeal is revoked. The case is closed.

## BACKGROUND

### I. Allegations of the Amended Complaint

Plaintiff alleges that he broke his foot in late December 2018 and that defendant treated him on December 26, 2018. *See* Dkt. 31-1, at 1. Plaintiff alleges that defendant waited until January 3, 2019—nine days—before consulting with an orthopedic specialist about his broken foot. Dkt. 31-1, at 1. The specialist recommended that plaintiff be in a cast for the next eight to ten weeks. Dkt. 31-1, at 2.

Plaintiff alleges that on January 4, 2019, around 7:40 p.m., he sought emergency medical attention for his foot but that defendant directed medical staff to deny plaintiff's request on the basis that he had already seen a doctor that day and would have to wait for the next available sick call, three days later. Dkt. 31-1, at 1. Plaintiff alleges that he suffered from pain and the inability to walk over the next several days, as a result. Dkt. 31-1, at 1.

Plaintiff further alleges that defendant gave him a walking boot but that another provider, Sarah Landis, told him in April 2019 that he should have still been in a cast and that "someone dropped the ball." Dkt. 31-1, at 1. Plaintiff alleges that defendant unlawfully ignored the specialist's recommendation that he be in a cast for eight to ten weeks. Dkt. 31-1, at 2.

Plaintiff alleges that as a result, he suffers from osteoarthritis and a permanent injury. Dkt. 31-1, at 2. Plaintiff also brought other claims, against the Department of Corrections, but the Court dismissed these claims and dismissed the Department of Corrections as a defendant.

1  *See* Dkts. 40, 41.  Therefore, the only remaining claims in this matter are those against defendant
2  Palmer.

3        **II.  Parties' Evidence**

4        Defendant seeks dismissal with prejudice of the claims against her.  Dkt. 57.  She relies
5  on her own declaration about her treatment of plaintiff, in which she asserts that on December
6  26, 2018, she provided conservative treatment that met the applicable standard of care for a left
7  foot fracture.  Dkt. 57-2, at 3–4.  She acknowledges that the orthopedic specialist later
8  recommended a weight-bearing cast but states that facility's medical clinic could not put a
9  walking cast on, so that she provided a walking boot and a housing restriction requiring plaintiff
10  to sleep on the lower bunk.  Dkt. 57-2, at 4–5.

11        She states that she does not recall receiving a telephone call about plaintiff on January 4,
12  2019, when plaintiff asserts that she denied emergency medical attention.  Dkt. 57-2, at 5.
13  Finally, she states that she attended plaintiff on January 7, 2019, and that plaintiff was provided
14  with a walking cane.  Dkt. 57-2, at 5.

15        With her motion for summary judgment, defendant also filed a notice of dispositive
16  motion warning plaintiff that if her motion were granted, his claims would be dismissed.  *See*
17  Dkt. 58.

18        Plaintiff rejoins that defendant acted in a manner that was "malicious, sadistic, racially
19  motivated[,] and pure evil."  Dkt. 59, at 4.  Plaintiff relies on his own declaration asserting that
20  defendant told him that the specialist had recommended a walking boot and that his request for
21  medical attention on January 4, 2019, was "denied by the nursing staff under the direction of
22  [defendant]."  Dkt. 60, at 2.  He provides a declaration from his former cellmate that on January
23  4, 2019, "nursing staff" denied the request for plaintiff's medical emergency and took his
24

ORDER GRANTING SUMMARY JUDGMENT
MOTION - 3

wheelchair. Dkt. 59-1, at 3. He relies on the specialist's recommendation for a weight-bearing/walking case for 8 to 10 weeks. Dkt. 59-2, at 1. And he has filed other miscellaneous documents as evidence in support of his claims. *See generally* Dkts. 59-1–59-7. Plaintiff also asserts that defense counsel has deliberately ignored him and moves to strike certain defense declarations. Dkt. 59, at 5–6.

## DISCUSSION

### I. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a summary judgment motion, the Court must take the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Conclusory allegations and mere speculation are not enough to create a genuine issue of material fact. *See, e.g.*, *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Finally, the Court may not engage in credibility determinations or weighing of the evidence when ruling on a summary judgment motion. *See Anderson*, 477 U.S. at 255.

The Court liberally construes a *pro se* complaint. *Entler v. Gregoire*, 872 F.3d 1031, 1038 (9th Cir. 2017). Moreover, "[a] verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (internal citation omitted).

///

## II. Discussion

### A. Eighth Amendment Legal Principles

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "A violation of the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's medical needs." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

"To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'" *Id.* (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). "First, there must be a demonstration that the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities.'" *Id.* (quoting *Hallett*, 296 F.3d at 744 (citation omitted)). Second, a prisoner must demonstrate that the prison official "'acted with deliberate indifference in doing so.'" *Id.* (quoting *Hallett*, 296 F.3d at 744 (internal citation and quotation marks omitted)). This second consideration incorporates a subjective inquiry: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Finally, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* (internal quotation marks and citation omitted).

///

**B. Delay in Consulting with Specialist and Failure to Provide a Cast**

As noted, plaintiff's first argument is that it violated the Eighth Amendment for defendant not to consult with a specialist sooner than nine days after his injury and not to then provide him with a weight bearing cast, which the specialist ultimately recommended for eight to ten weeks following the injury. *See* Dkt. 31-1, at 1–2.

Defendant relies on her own declaration that she examined plaintiff's foot on December 26, 2018, assessed a fracture after ordering an x-ray, placed plaintiff on non-weight bearing status in a wheelchair, gave plaintiff pain medications "as needed," and moved him to an ADA-accessible housing unit. Dkt. 57-2, at 3. She asserts that her care was commensurate with the standard of care for an acute fracture and that there was no immediate urgency contacting a specialist because plaintiff was being treated conservatively for the fracture. Dkt. 57-2, at 3. She also asserts that although the specialist recommended a cast, she observed that the location of plaintiff's fracture allowed him to bear weight in a walking boot. Dkt. 57-2, at 4. The clinic did not have walking cast supplies, and defendant's medical training and experience was that plaintiff could have the same support from a walking boot, which would also be more comfortable. Dkt. 57-2, at 4–5. Defendant also put in an order for a housing restriction so that plaintiff would not have to try to use an upper bunk with the boot on. Dkt. 57-2, at 5.

Defendants also provide a declaration from the facility medical director, John Rodakowski, stating that not placing plaintiff in a cast immediately after his injury was consistent with the medical director's training and experience and was appropriate following the injury. Dkt. 57-4, at 3. Indeed, a cast could have caused severe pain and tissue damage when used immediately after an injury. Dkt. 57-4, at 3. Even after the specialist's recommendation, a

walking boot was preferred because, among other things, it could not be weaponized and could be readily searched.  Dkt. 57-4, at 3.

Plaintiff comes forward with no evidence tending to establish more than a disagreement with defendant's medical opinion that a cast was unnecessary, that a medical boot was appropriate, and that a consultation with the specialist was not too urgent to wait nine days.  The Court has reviewed the evidence that plaintiff relies upon, but none of it contradicts defendant's declaration to the extent that she states that she provided medical care commensurate with what her experience and understanding of the situation assessed as appropriate.  The specialist did not state that the only appropriate treatment for plaintiff's injury was a cast, and the specialist specifically opined that plaintiff could bear weight.  *See* Dkt. 59-2, at 1.  Although plaintiff claims that a nurse (Kelli Delp) and another provider (Landis) told him that he should not be walking on his leg and that someone made a mistake by not placing him in a cast, this evidence does not amount to more than, at most, a disagreement over the proper treatment for plaintiff's fracture, even taken as true.  *See* Dkt. 60, at 2–3.  Nothing in plaintiff's account of the Nurse Delp's opinion indicates that she believed a cast would be preferable to the boot that he was given.  *See* Dkt. 60, at 2.  The statement that in April 2019, Landis said that someone messed up and that plaintiff "should have been in a cast" does not shed any light on whether defendant was deliberately indifferent to plaintiff, even when taken as true and construed in plaintiff's favor.  *See* Dkt. 60, at 3.  Mere disagreement between medical opinions does not amount to an Eighth Amendment violation.

Turning to plaintiff's evidentiary objections, as relevant to this issue, plaintiff argues that the Court should strike Rodakowski's declaration because he did not know plaintiff and gave only general medical views.  *See* Dkt. 59, at 4–5.  These are not reasons to strike the declaration,

which provides evidence about the appropriate standard of care from a medical doctor and a person who is familiar with DOC resources and treatment. *See* Fed. R. Civ. P. 56(e). The Court declines to strike the declaration.

### C. Failure to Provide Medical Attention

Plaintiff's second argument is that it violated the Eighth Amendment for defendant to deny plaintiff medical attention on January 4, 2019. Defendant argues that there is no evidence that she had anything to do with the alleged refusal to provide medical care to plaintiff on that date. Dkt. 57, at 5–6. The Court agrees with defendant.

Defendant states that she was the on-call provider January 4, 2019, but that she did not recall receiving any telephone calls about plaintiff. Dkt. 57-2, at 5. She states that not all medical emergency claims require a phone call to the on-call provider and that if the on-duty nurse determines that calling a provider is unnecessary, the on-duty nurse will instead advise the prisoner to sign up for sick call or submit a kite to their provider—without contacting the on-duty provider, such as defendant. Dkt. 57-2, at 5.

As noted, defendant states that she had already seen plaintiff and provided follow-up care for his injury the morning of January 4, 2019. Dkt. 57-2, at 4. She states that the next time she saw plaintiff was January 7, 2019, when she conducted an intake medical examination for continuity of care. Dkt. 57-2, at 5. Plaintiff was provided with a walking cane, and defendant states that she did not have any further medical encounters with plaintiff. Dkt. 57-2, at 5.

Defendant also provides Nurse Delp's declaration, stating that she saw plaintiff on January 6, 2019, when he requested a wheelchair. Dkt. 57-3, at 3. She gave plaintiff crutches and put him on the list for a medical appointment the next day. Dkt. 57-3, at 3. The next day, plaintiff returned and was attended to by defendant. Dkt. 57-3, at 4.

1     For his part, plaintiff repeatedly asserts that defendant "deliberately instructed her subordinates to refuse to provide me care[.]" Dkt. 59, at 3. However, plaintiff provides no evidence to support this allegation other than speculation and the fact that defendant was on call as the provider. *See, e.g.*, Dkt. 59-1, at 3 (plaintiff's cellmate's declaration that "nursing staff" denied the medical emergency). Plaintiff has filed notes by an unspecified author stating that the "Nurse" (not defendant, who is a physician's assistant) refused to see him on the basis that he had already seen a provider. Dkt. 59-1, at 4. But these notes do not identify the person who made this statement—other than it apparently was not defendant. Dkt. 59-1, at 4. Moreover, this evidence is not competent evidence in opposition to summary judgment because it is unclear who authored the document, among other reasons. *See* Fed. R. Civ. P. 56(c)(2).

    Defendant's position that she did not instruct anyone to deny care remains unrefuted by any evidence that can be taken as true on summary judgment. The Court cannot take as true plaintiff's claims that defendant personally refused to provide him care where those claims rest on no more than plaintiff's allegations about matters outside his personal knowledge. *See* Fed. R. Civ. P. 56(c)(4); *see also* Dkt. 31-1, at 1–2 (plaintiff's complaint, asserting that an anonymous source told him that defendant instructed staff to deny his emergency).

    Plaintiff takes issue with defendant's statement that "she had a routine visit with me" on January 7, when, in fact, Nurse Delp scheduled the appointment. Dkt. 59, at 7. There is not a genuine factual issue on this point, however, since defendant does not state that the visit was routine (rather, she states that she took "[r]outine" blood tests at the visit) (Dkt. 57-2, at 5) and Nurse Delp also states that she scheduled the appointment. Dkt. 57-3, at 3.

    In short, plaintiff fails to provide evidence that defendant personally participated in any decision to deny him care on January 4, 2019. *See Johnson v. Duffy*, 588 F.2d 740 (9th

Cir.1978) (explaining that to be liable for causing the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation). His claim is therefore subject to dismissal on summary judgment.

### D. Medical Negligence

Plaintiff also alleges that defendant was negligent in providing care. Defendants argue that plaintiff's claims must be dismissed because he has failed to provide expert evidence that defendant violated the standard of care. *See* Dkt. 57, at 13. Again, the Court agrees.

A claim of medical negligence under Washington law requires the plaintiff to prove two elements: (1) defendant "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider" in defendant's position, and 2) that failure proximately caused plaintiff's injury. RCW 7.70.040; *Keck v. Collins*, 184 Wn.2d 358, 371 (2015).

"[T]o defeat summary judgment in almost all medical negligence cases, the plaintiffs must produce competent medical expert testimony establishing that the injury was proximately caused by a failure to comply with the applicable standard of care." *Seybold v. Neu*, 105 Wn. App. 666, 676 (2001). An expert must testify about "what a reasonable doctor would or would not have done, that the [d]octor[ ] failed to act in that manner, and that this failure caused her injuries." *Keck*, 184 Wn.2d at 371 . Nonetheless, expert testimony is not necessary if the medical facts are observable to the lay person. *Bauer v. White*, 95 Wn. App. 663, 667 (1999).

As noted above, there is no evidence that defendant personally directed staff not to respond to plaintiff's request for emergency care on January 4. Nor has plaintiff come forward with any medical expert evidence that failure to consult with a specialist more quickly was a breach of the standard of care that proximately caused injury to plaintiff.

As for the claim that plaintiff should have received a cast, plaintiff's arguments rely on his statement that on April 9, 2019, provider Sarah Landis told him that he "should have been in a cast" and "someone [messed] up[.]" Dkt. 60, at 3. However, this evidence is inadequate, even taken as true, for a reasonable trier of fact to find in plaintiff's favor on his medical negligence claim. The brief allusion to Landis's statement does not include any explanation of how she is qualified to render a medical expert opinion or what injuries she opines the failure to place plaintiff in a cast proximately caused. *See Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 227–230 (1989) (explaining that the expert testimony must be provided by a provider possessing equivalent skills and expertise as those of the defendant provider). Indeed, elsewhere in plaintiff's evidence is a note from Landis stating in that she did not have the benefit of the specialist's opinion at this time and herself prescribing a walking boot. *See* Dkt. 59-2, at 2. Nor is this a situation where the medical facts are so obvious to a lay person that medical expert testimony is unnecessary. Plaintiff had not disclosed any medical expert witness by the expert disclosure deadline in this matter. Accordingly, defendant is entitled to summary judgment dismissal of his medical negligence claims, as well.

### III. Evidentiary Arguments

The Court notes that plaintiff also advances several evidentiary arguments, including arguments that defense counsel has refused to cooperate and provide various evidence. *See* Dkt. 59, at 1–2. However, the deadline for discovery-related motions has passed, the Court has already resolved the discovery issues raised in this matter, and the Court declines to further address such arguments at this juncture.

Plaintiff also argues that defendant does not provide a specialist report in support of her claims. Dkt. 59, at 1. However, it is plaintiff's burden to provide evidence in support of his claims. *See Anderson*, 477 U.S. at 256.

Plaintiff requests that the Court strike the declaration of Carol Smith. Dkt. 59, at 6. Resolution of this issue is unnecessary to decide the summary judgment motion. Similarly, the Court does not address defendant's arguments for striking plaintiff's evidence other than as previously stated in this Order.

**IV. IFP on Appeal**

IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An appeal would not be in good faith, so that the Court revokes IFP status for purposes of any appeal.

**CONCLUSION**

The summary judgment motion is granted (Dkt. 57), plaintiff's remaining claims (against defendant Palmer) are dismissed with prejudice, and permission to proceed IFP is revoked for appeal purposes. Judgment is for defendant, and the case is closed.

Dated this 30th day of June, 2022.

J. Richard Creatura
Chief United States Magistrate Judge